## Brace *v.* Pennsylvania Water Company, Appellant.

*Water companies—Corporations—Breaking down of plant—Jurisdiction of equity—Remedy at law—Act of June 2, 1887, P. L.* 310.

A court of equity has no jurisdiction under the Act of June 2, 1887, P. L. 310, to assess damages against a water company for loss sustained by a customer of the company caused by lack of water, during a breakdown of the water company's pump, where it appears that the company had provided a proper and sufficient plant, that the breakdown was accidental, that everything was done that could be reasonably expected to repair the break-

age to get the plant into working order again, and that the bill was not filed until a week after the damage had been repaired, and when the company was supplying water in full quantity.   In such a case a decree for damages cannot be assessed against the water company, because of the company's failure during the breakdown to connect its lines with those of a neighboring city.

The equity jurisdiction conferred upon the court of common pleas by the Act of June 2, 1887, sec. 3, P. L. 310, was for the protection of the public's interests, and to insure the performance of a public duty.   It was not intended to abrogate the jurisdiction of the law courts to adjudicate questions of damage growing out of contracts between the water companies and private individuals.

Argued April 15, 1903.   Appeal, No. 9, April T., 1903, by defendant, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1900, No. 104, on bill in equity in case of C. H. Brace and W. C. Brace, trading as Brace Bros., v. Pennsylvania Water Company.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. D. PORTER and MORRISON, JJ.   Reversed.

Bill in equity for an injunction for damages.

The facts appear by the opinion of the Superior Court.

The court below entered the following decree.

And now, to wit: April 8, 1902, this cause came on to be heard, and after arguments, upon consideration, it is ordered, adjudged and decreed as follows, to wit: .That the defendant company having complied with its duties to supply plaintiff and others with a sufficient supply of water, nothing further is required of the defendant in that respect; but having been negligent in doing what was its duty to do, in getting water from the city of Pittsburg, it is liable in damages to the amount of $136 therefor, for which judgment is now entered, and it is further ordered that the defendant pay the costs of this proceeding.

*Error assigned* was the decree of the court.

*A. W. Duff*, with him *H. E. Carmack*, for appellants, cited : Brymer v. Butler Water Co., 172 Pa. 489.

*W. K. Jennings*, for appellees.

OPINION BY PORTER, J., March 14, 1904 :

The plaintiffs by the second paragraph of their bill, based their claims for relief upon the provisions of the third section

of the Act of June 2, 1887, P. L. 310 : "Provided that said corporation shall at all times furnish pure . . . . water, and any citizen using the same may make complaint of impurity or deficiency in quantity, or both to the court of common pleas of the proper county by bill filed, and after hearing the parties touching the same, the said court shall have power to make such order in the premises as may seem just and equitable, and may dismiss the complaint or compel the corporation to correct the evil complained of." The third paragraph of the bill alleges that the plaintiffs had been receiving water from the defendant corporation for a number of years ; that the defendant had cut off the supply and failed to furnish water from Wednesday, September 12, 1900, about 4 o'clock in the afternoon, to the following Friday at 5 : 30 o'clock in the evening, and that because of such failure of the defendant to furnish water during said two days the plaintiffs had suffered damage. The fourth paragraph of the bill averred that the plaintiffs had made an examination and discovered that the only pump then being operated by the defendant company was leaking at the steam cylinder and in such condition that there was imminent danger of its blowing out and a cessation of work for a period of at least four days ; the plaintiffs had been informed by the director of the department of public works of the city of Pittsburg that the pipes of the defendant company were connected by pipes with the water works of the city of Pittsburg, and that the department of public works was able and willing to furnish all the water that the defendant company might need; it being only necessary for them to open the gate and allow it to flow into their pipes ; that the plaintiffs had notified the defendant company that the supply of water had been deficient in quantity and inquired whether an arrangement had been made by which in case of accident the water from the city of Pittsburg could be turned into their mains and received no satisfactory reply ; and that they had notified the defendant company that they would apply to court. This bill was filed on September 22, 1900. The defendant filed an answer averring that the source of supply of water was the Allegheny river ; that prior to the time of alleged shortage of supply, during the period from September 12, to September 14, they had provided a pump of the best make with a capacity of six million gallons per day,

which was three times the amount of the ordinary demand, and that in order to keep in advance of requirements they had, in May, 1899, ordered a duplicate of said pump, which was then being constructed and placed in position, and that the shortage of water resulted from an accident to the pump then in operation, which accident could not have been foreseen and was not caused by the negligence of the company or its employees, that by the breaking of a casting the capacity of the pump was reduced one half, that a duplicate of the broken casting was at once ordered from the manufacturer by telegram, that when it arrived it was found to be one eighth of an inch too large, that the work of reducing it was tedious but was conducted as rapidly as possibly, that it was necessary to stop the pump in order to place the new casting in position, and that the shortage of supply was from this cause alone. The answer denied that the pipe lines of the defendant company were connected with the water works of Pittsburg.

The learned judge of the court below, after hearing evidence, found the following facts : " The defendant company had constructed its pumping plant at Wildwood station on the Allegheny river, and its reservoir on the river hill, about 600 feet above." The defendant company has " and had on September 12, 1900, one duplex Nordburg pump (completed in March, 1900) having a capacity of six million gallons of water in twenty-four hours, while the consumption per twenty-four hours was from—one and three quarters to—two millions gallons. Its said reservoir had a capacity of a trifle under seven million gallons. This plant was completed on September 12, 1900. In addition the defendant company then had in process of construction a duplicate pump having a capacity of six million gallons per twenty-four hours, and a second reservoir having a storage capacity of thirteen million gallons. This second pump and second reservoir were not completed, or in order, at the time of the accident hereafter referred to. It is perfectly clear that the defendant company has at the present time a perfect and sufficient plant by which it can and does and as far as reasonable foresight can anticipate will be able to supply not only plaintiffs but all its customers with an abundant amount of water for a long time to come." " Fourth. A few days prior to September 12, 1900, the piston rod of

the pump in use broke and the plant was run for a few days with one side of the pump. A new casting was telegraphed for from the manufacturer and the pump was shut down to put it in. It was found that the casting owing to some mistake of the builders was about one eighth of an inch too large and this had to be reduced in order to complete the work.. The work was of such a character that only two persons could work in the pit, and owing to the delay the water supply of the defendant company was exhausted on September 12, and not restored until September 15. Everything was done that. could be reasonably expected under the circumstances to repair. the breakage and get the plant into working order again."·

" Fifth. A six-inch water supply line of the defendant company had at one time been connected with a six-inch water line of the city of Pittsburg, but this connection had been. taken out some time prior to this accident through the order of the officials of the city of Pittsburg. This connection: could have been restored in twenty-four hours and the evidence shows that the plaintiffs in this case conferred with.the officials. of the city of Pittsburg with relation to this being done and plaintiffs secured the assent of the proper officials thereto who also expressed a willingness to give defendant all the water it needed. This fact was communicated by plaintiffs to the defendant, and defendant was requested to make the· connection, but it neglected or refused to make the connection with the mains of the city of Pittsburg. If this connection had been made, the defendant company could have obtained a water supply of three hundred thousand gallons of water in twenty-four hours into its distributing mains at the same price paid by the plaintiffs to defendant, viz : ten cent per one thousand gallons, and this supply could have been used so far as it would have gone towards the supply of one and three quarters to two million gallons per twenty-four hours required to meet the requirements of its customers. This might perhaps have been enough to enable plaintiffs to carry on their business in the ordinary way. Whether it would or not is very doubtful." The court also found that the plaintiffs were damaged to the amount of $136 by the shortage of the water supply during the two days mentioned.

The learned judge in stating his conclusions of law arising

from the facts as found by him makes clear the grounds upon which he entered a decree assessing damages against the defendant company. He says : " The evidence shows that the failure to supply the water to the plaintiffs was unintentional and caused solely by an unexpected breakage in its pumping machinery and also that everything was done that could be reasonably expected to repair the breakage and get the plant into working order again. But while this is not seriously controverted, it is alleged by plaintiffs that defendant failed to perform its whole duty to them by not taking advantage of the means within its reach to obtain water from another source, to wit: the city of Pittsburg. . . . This seems to me the only question now involved in the case, the water works being in perfect condition to supply all the water required." " Of course the water companies are not required to perform impossibilities, but we think they are bound in an emergency such as arose in this case, to procure water from other sources for their customers when it can be done without undue expense." The findings of fact clearly establish that the works of the water company upon which the plaintiffs depended for their supply were a comparatively recent undertaking. The original plant had been completed in March, 1900. That plant was capable of supplying three times the quantity of water for which there was any demand. The capacity of the plant was reduced one half through an accident to the machinery. Every possible step was taken to promptly repair the broken casting. When the duplicate of the broken part arrived, it was necessary to shut down the entire plant to place it in position, and because of a mistake by the manufacturer, for which the defendant company was not responsible, the time consumed in putting the new part in place was longer than had been expected, and a shortage of the supply of water resulted. The defendant company was then engaged in the installation of a plant which practically duplicated that then recently finished. The court has found that the defendant company had before this bill was filed taken the steps to discharge every duty to the public which it had undertaken to perform, and that the only possible ground of complaint was its failure to obtain a supply of water from another source, during a shortage of supply resulting from an accident which could not have been prevented.

The court was exercising a jurisdiction expressly conferred upon it by statute, a power to supervise the manner in which a corporation which had undertaken a public duty executed that undertaking. The duty was one which the corporation owed to the public. If the plaintiffs had entered into any contract with the defendant company, which gave them peculiar rights, their remedy was by an action at law upon the contract. The court had jurisdiction to inquire whether the company had secured a source of supply of water reasonably sufficient to meet present and prospective demands, and had exercised due diligence in the effort to preserve it from pollution and deliver it to the public in sufficient quantities. Had the evidence established that the company had in these matters come short in its duty, the court had jurisdiction to suspend the collection of water rents until the water was furnished. But even if there had been a shortage of water supply at the time this bill was filed, the court did not have jurisdiction under the authority conferred by this statute to order the defendant company to connect its lines with the water system of the city of Pittsburg and obtain a supply from that source: Brymer v. Butler Water Company, 172 Pa. 489. The court being without jurisdiction to order the defendant company to connect its lines with those of the city of Pittsburg, it had no power to assess damages against the company for its failure to do so. The equity jurisdiction conferred upon the court of common pleas, by the statute was for the protection of the public interests, and to insure the performance of a public duty. It was not intended to abrogate the jurisdiction of the law courts to adjudicate questions of damage growing out of contracts between the water companies and private individuals.

The decree is reversed, the bill is dismissed, and it is ordered that the plaintiffs pay the costs.